IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


LACEY G.,[1]                                         Case No. 3:21-cv-00882-YY

          Plaintiff,                         OPINION AND ORDER

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

          Defendant.


YOU, Magistrate Judge.

       Plaintiff Lacey G. seeks judicial review of the final decision by the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-

33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42

U.S.C. §§ 1381-1383f.   This court has jurisdiction to review the Commissioner's final decision

pursuant to 42 U.S.C. §§ 405(g).

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

Defendant has filed a responsive brief that includes a motion to remand for further proceedings. ECF 15. The motion is granted in part in that this matter is reversed and remanded; however, rather than being remanded for further proceedings, it is remanded for immediate award of benefits.

## BACKGROUND

Plaintiff filed for DIB and SSI benefits on June 29, 2016, alleging disability beginning on May 17, 2014. Plaintiff's claims were initially denied on January 11, 2017, and upon reconsideration on April 19, 2017. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on July 24, 2018. At the hearing, plaintiff and a vocational expert testified. The ALJ issued a decision on September 24, 2018, finding plaintiff not disabled within the meaning of the Act, and the Appeals Council denied plaintiff's request for review on October 8, 2019.

Plaintiff appealed the denial to this court. *Lacey G. v. Commissioner, Social Security Adm.*, 3:19-CV-01950-MK. The court granted the parties' stipulated motion to remand, and remanded the matter for the ALJ to "further evaluate Plaintiff's impairments; re-evaluate all of the opinion evidence, including the opinion of Daniel Scharf, Ph.D.; further evaluate Plaintiff's alleged symptoms; reassess Plaintiffs residual functional capacity according to SSR 96-8p; and if warranted by the expanded record, obtain supplemental vocational expert evidence to clarify the effect of the assessed limitations on Plaintiffs ability to perform other work in the national economy." *Id.*, Order (August 7, 2020).

In the meantime, plaintiff filed another application for benefits on December 10, 2019. Tr. 1239. The applications were consolidated, and the ALJ held a combined hearing on January

20, 2021. The ALJ issued a decision on March 18, 2021, Tr. 1052, which is the Commissioner's

final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence

that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a

specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir.

2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not

substitute its judgment for that of the Commissioner when the evidence can reasonably support

either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

Instead, where the evidence is susceptible to more than one rational interpretation, the

Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from

the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see

also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920;

*Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180

F.3d 1094, 1098-99 (9th Cir. 1999)). The claimant bears the burden of proof at steps one

through four. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 17, 2014, the alleged onset date. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: degenerative disc disease; left hip labrum tear; depression; post-traumatic stress disorder ("PTSD"); and anxiety (20 CFR 404.1520(c) and 416.920(c)).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ found that plaintiff had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows. The claimant can occasionally climb ramps and stairs. She cannot climb ladders and scaffolds. She can frequently crawl. She is limited to simple, routine, repetitive tasks and simple, work-related decisions. Interaction with coworkers and supervisors is limited to the occasional level. However, tasks should be completed independently without the need for coordinated efforts with coworkers. The claimant needs to use a single point cane when ambulating and can use one upper extremity while walking." Tr. 1059.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that—considering plaintiff's age, education, work experience, and residual functional capacity—there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cutter and paster, press clippings, stem mounter, and addresser. Thus, the ALJ concluded that plaintiff was not disabled.

## DISCUSSION

Plaintiff argues the ALJ erred by discounting her subjective symptom testimony and the opinions of medical and lay witnesses. Defendant concedes the ALJ erred by not discussing the

side effects of medication, but argues that remand for further proceedings is the appropriate remedy because the record leaves serious doubt that plaintiff is disabled. Def. Br. & Mot. Remand, ECF 16. Plaintiff counters that defendant's failure to respond to her remaining arguments constitutes a concession, meaning the case should be remanded for the immediate award of benefits.

Courts have held that the Commissioner's failure to respond to a plaintiff's arguments constitutes a concession. *See Krista B. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-01822-HL, 2021 WL 5235969, at *4 (D. Or. Nov. 10, 2021) ("This Court declines to independently review and assess Plaintiff's arguments where the Commissioner has not done so on review. Nor will this Court remand those issues to the ALJ for further consideration, thereby forcing Plaintiff to relitigate them."); *Hunt v. Colvin*, 954 F. Supp. 2d 1181, 1196 (W.D. Wash. 2013) (construing the Commissioner's failure to respond to an argument as a concession that the plaintiff's argument has merit and finding the "Court will not manufacture a defense on the Commissioner's behalf where Plaintiff has identified an at least plausible error"). Nevertheless, this court examines in more detail the issues raised by plaintiff because doing so is at least helpful for purposes of assessing whether this matter should be remanded for further proceedings or the immediate award of benefits.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that

the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not

credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12

F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage

in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR")

96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.

*See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to

"credibility," clarifies that "subjective symptom evaluation is not an examination of an

individual's character," and requires the ALJ to consider all the evidence in an individual's

record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's

statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant

evidence in the individual's case record." *Id.* at *4.

A.      **Medical Impairments**

The ALJ found plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record for the reasons explained in this decision."

Regarding plaintiff's degenerative disc disease, the ALJ observed that "imaging studies [d]o not support a finding of disability." Tr. 1061. With respect to plaintiff's hip pain, the ALJ cited to plaintiff's x-rays, MRIs, and a CT scan. *Id.*

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, when coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

Here, in addition to the objective medical evidence, the ALJ observed that plaintiff's "treatment for degenerative disc disease has been routine and conservative in nature." Tr. 1061. *See Parra*, 481 F.3d at 751 ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). In particular, the ALJ noted that "[n]o provider has recommended any surgery, prescribed a TENS unit, or recommended a spinal cord stimulator," but "[r]ather, [plaintiff] has received pain medication, gabapentin, and muscle relaxers, and her providers have recommended daily exercise." Tr. 1061 (citing B4F/19/21/26; B10F/15).

Plaintiff began suffering back pain following an accident in 2006 when she was riding as a passenger in a car that was t-boned.  Plaintiff also experiences left leg pain and uses a cane.  Tr. 666.  Over the course of 7 years, plaintiff saw 13 different providers and tried 26 different medications.  Tr. 1652.  Although not all of these medications were for pain, plaintiff has been prescribed copious quantities of narcotics, including oxycodone and morphine, as well as gabapentin, which she took several times a day for many years.  Plaintiff also has received injections to her hip.  Plaintiff, who has two children, suffered "a lot of physical pain" while she was pregnant and unable to take medications.  Tr. 497; *see also* Tr. 518 ("Worried about another pregnancy due to her significant back pain.").  Therefore, even though she wanted more children, she made the difficult decision to undergo laparoscopic sterilization when she was 31 years old. Tr. 499, 1384.

"Many courts have . . . found that strong narcotic pain medications and . . . injections are not considered to be 'conservative' treatment."  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) (citing *Garrison*, 759 F.3d 995, 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Yang v. Barnhart*, No. ED CV 04-958-PJW, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications); *Christie v. Astrue*, No. CV 10–3448–PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid injections, trigger point injections, and epidural injections as conservative); *Aguilar v. Colvin*, No. CV 13–08307–VBK, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff

for overly conservative treatment when he has been prescribed strong narcotic pain medications.").

The ALJ also discounted plaintiff's testimony because she failed to follow through with exercise as recommended. Tr. 1063. "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). But, as even the ALJ observed, plaintiff's insurance did not cover physical therapy and plaintiff engaged in some stretching at home. During her testimony, plaintiff explained that she did some stretching at home as recommended, but was unable to complete the physical therapy exercises because they were too strenuous. Tr. 1089. She also explained that, in the past, she had tried acupuncture, massage therapy, and chiropractic treatment, but they provided no relief. Tr. 367; *see* Tr. 669 (records indicating plaintiff tried physical therapy and two years of consistent acupuncture, but "these were ineffective"). On this record, it cannot be said that plaintiff willfully failed to follow through with a recommended course of treatment such that it demonstrates her complaints are unjustified or exaggerated.[2]

### B.    Psychiatric Impairments

The ALJ concluded that while plaintiff was diagnosed with and treated for depression, anxiety, and PTSD, "the evidence of record does not show [her] mental symptoms are at a level that would keep her from sustaining fulltime work." Tr. 1062. Again, even assuming that plaintiff's complaints are inconsistent with the medical record, this cannot constitute the sole

---

[2] Notably, records do not indicate that plaintiff's weight is an issue in relation to her pain symptoms. Plaintiff's BMI has consistently been between 20 and 22 (Tr. 1402, 1413, 1418, 1427, 1584, 1990, 2024, 2104), which is within the healthy range for adults. *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#InterpretedAdults.

reason for discounting her testimony. *Reddick*, 157 F.3d at 722. The ALJ also found that plaintiff had "received very routine and conservative mental health treatment, including medication management and therapy," and did not have a significant history of psychiatric decompensations requiring hospitalization. Tr. 1062. This was not a clear and convincing reason to discount plaintiff's testimony.

Plaintiff has been diagnosed with Major Depression, Panic Disorder, and Anxiety Disorder NOS. Tr. 729. She has suffered from depression since she was a child in middle school. Her family members, including her father, mother, and brother, have struggled with depression, and her brother attempted suicide "multiple times and [was] in and out of mental institutions." Tr. 656, 1560. Plaintiff reported that feeling anxiety and depression are "normal" for her. Tr. 734. She described being a "loop" where "she cycles back and forth between 'hating my life and considering suicide' only to be confronted with her fear of death and realization that suicide is not an option due to this fear." Tr. 1532. Plaintiff perceives herself as ugly and stupid, and believes she is a loser and has always been a loser. Tr. 877; *see also* Tr. 557 (repeating "I'm a failure" multiple times); Tr. 836 (same); Tr. 892 ("I feel like a total failure.").

Plaintiff has been prescribed a "multitude" of medications over the years, including clonazepam (Klonopin), fluoxetine (Prozac), and duloxetine (Cymbalta), which she took in conjunction with numerous pain killers, muscle relaxants, and migraine medications. *See* Tr. 668 (April 4, 2017 chart note listing 13 different prescribed medications). Finding the correct dosage has sometimes been a challenge. For instance, when plaintiff tried to lower her dosage of Prozac, she started to feel suicidal, and when she needed to increase her dosage of Cymbalta, she "found herself feeling angry most of the time." *Id.* Also, plaintiff's prolonged use of Klonopin was making her more vulnerable to anxiety because her brain was becoming more sensitized and

dependent on the medication.  *Id.*  Social Security regulations observe that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show they are intense and persistent."  SSR 16-3p, at *9.

Plaintiff's history of treatment, which involves multiple providers and multiple psychiatric medications does not constitute substantial evidence of routine and conservative treatment.  *See Corrina D. v. Kijakazi*, No. CV 20-07664-JEM, 2021 WL 8362905, at *5 (C.D. Cal. Dec. 15, 2021) ("Courts have established that medication treatment regimens with such medications are not conservative.") (citing *Emme J. C. v. Saul*, No. EDCV 19-02186 PVC, 2021 WL 3730165, at *5 (C.D. Cal. Mar. 23, 2021) (Ativan, Buspar, Haldol, Cymbalta, Zoloft); *Ray A. B. v. Saul*, No. 3:19-cv-00837-YY, 2020 WL 6820799, at *10 (D. Or. Nov. 20, 2020) (Efflexor, Trazadone, Prozac, others); *Maria B. v. Saul*, No. EDCV 20-192-KK, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020) (Raxulti, Latuda, Prozac, Paxil, Zoloft, Efflexor); *Wilson v. Berryhill*, No. CV 17-06967-AFM, 2018 WL 6321629, at *4 (C.D. Cal. Jul. 9, 2018) (Prozac, Trazadone, Wellbutrin, Seroquel, Zoloft, Ativan, Paxil).  "Nor must a claimant undergo psychiatric hospitalization to be considered disabled."  *Corrina D.*, 2021 WL 8362905, at *5 (citing *Torquato v. Berryhill*, No. 17-cv-02127-BAS-NLS, 2018 WL 3064568, at *6 (S.D. Cal. Jun. 20, 2018); *Matthews v. Astrue*, No. EDCV 11–01075–JEM, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012)); *Choat v. Berryhill*, No. 6:17–cv–00617–HZ, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (finding lack of hospitalization and the use of psychiatric medications is not conservative treatment); *Jill C. v. Berryhill,* No. 3:17-CV-01892, 2018 WL 6308728, at *11 (D.

Or. Dec 3, 2018) (same); *Tammy L. O. v. Comm'r Soc. Sec. Admin.*, No. 3:17-cv-774-SI, 2018

WL 3090196, at *13 (D. Or. June 20, 2018) (same).

      The ALJ also discounted plaintiff's subjective complaints because she stopped attending

treatment in November 2020 and reported that she felt good about how she had dealt with her

impulsive behavior.  Tr. 1062; *see* Tr. 2118 (November 29, 2020 chart note).  But this isolated

statement regarding an improvement in impulsive behavior cannot be taken out of context.  The

impulsive behavior pertained to shoplifting incidents that had occurred years before.  *See* Tr.

416, 731.  During her November 29, 2020 therapy session, plaintiff reported she had a "really

bad day yesterday" due to feelings related to her older sister's recent identity theft conviction and

concern for her sister's children.  Tr. 2118.  Plaintiff remarked that she "feels pretty good about

how she has dealt with her own impulsive theft behavior and does not feel at risk of repeating

this."  *Id.*  But the same chart note otherwise indicates that plaintiff reported "continued . . .

depressed mood, most of the day, nearly every day," "decreased interest and pleasure in

previously enjoyable activities, low appetite, sleep disturbance, psycho motor retardation nearly

every day (observable by others), fatigue or loss of energy nearly every day, feelings of

worthlessness and excessive guilt and difficulties with focus and concentration or decision-

making," as well as recurrent and unexpected panic attacks that caused her to limit her ventures

outside the home for fear it might trigger an attack.  Tr. 2124-25.

      Moreover, plaintiff had not "stopped going to therapy" by November 2020.  Plaintiff

acknowledged that she had "fallen off of attending and participating in therapy" but "recognized

that she seems to do better with managing her mental health struggles" when she has that

support, and "was frank about [her] preference to keep sessions remote as much as possible" due

to anxiety, ambulation concerns, and possible COVID exposure.  Tr. 2118.  The ALJ observed

that plaintiff's "providers have noted she was not compliant with therapy or medication management appointments." Tr. 1063.  The record reflects that plaintiff in fact did not attend all of her appointments; however, this often was for legitimate reasons such as she was ill (Tr. 1523), forgot (Tr. 836), had the date mixed up (Tr. 836), sprained her ankle (Tr. 906), fell (Tr. 1512), was confused (Tr. 1523), or had car trouble (Tr. 1530).  And when plaintiff attended therapy, she consistently appeared depressed  sad, worried, scared, hopeless, irritable, tired, and presented with slow thoughts, a slow gait, and a pained expression.  *See*, *e.g.*, Tr. 707-08, 728-29, 1534-35, 2124.

In sum, the ALJ erred in rejecting plaintiff's subjective symptom testimony regarding her mental impairments.

## II.    Medical Opinion Evidence

### A.    Relevant Law[3]

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Orn*, 495 F.3d at 632.

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record."

---

[3] Under the new regulations, effective for claims filed on or after March 27, 2017, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive."  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  However, these regulations do not apply to this case because plaintiff filed her application for benefits in 2016.

*Id*. (treating physician) (quoting *Reddick*, 157 F.3d at 725); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725); *Widmark*, 454 F.3d at 1066.

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Id.*

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### A.    Gary McGuffin, Psy.D.

Plaintiff saw Dr. McGuffin, a licensed clinical psychologist, for an evaluation on January 16, 2021.  Tr. 1650.  The ALJ gave Dr. McGuffin's opinion little weight, in part because he "largely cited to the claimant's subjective symptom reports."  Tr. 1064.  "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  However, here, as discussed above, the ALJ's

decision lacked clear and convincing reasons to reject plaintiff's subjective symptom testimony. Therefore, the ALJ erred in rejected Dr. McGuffin's opinion on this basis.

The ALJ also rejected Dr. McGuffin's opinion because he was "not a treating provider." Tr. 1064. However, "[w]hen considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, No. CV13–05598–BJR, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014). Thus, this was another invalid reason to reject Dr. McGuffin's opinion.

The ALJ further observed it was unclear whether Dr. McGuffin had reviewed the entire record. However, in an addendum to his report, Dr. McGuffin listed all of the reports he had reviewed. This addendum contains 65 entries spanning the period between 2013 and 2020, which correlates to the period on review. Also, Dr. McGuffin cited to plaintiff's previous diagnoses by four mental health professionals—Johanna Heymann, LCSW, at Kaiser on June 7, 2013, Jeffrey Kempel, LPC, at Clackamas County Behavioral Health on July 9, 2014, Dr. Scharf on April 10, 2017, and Alisa Weaver, LCSW, at Clackamas County Health Centers, on November 29, 2020. Tr. 1650. Considering the extent of the records reviewed by Dr. McGuffin, this was not a sufficient reason to discount his opinion.

The ALJ additionally observed that Dr. McGuffin's opinion was inconsistent with records showing "[n]o provider noted any learning barriers to treatment" and "no treatment notes from the period at issue show any problems with distraction, that [plaintiff] was tangential, or that [plaintiff] needed any redirection." Tr. 1062, 1065. However, plaintiff herself reported that she had problems with distractability and needed redirection, and her testimony has not been

properly discounted. *See* Tr. 416 ("She describes daily depressed mood, anhedonia, indecisiveness, worry, panic-like physical symptoms, poor memory, distractability, low self-worth, fatigue, low motivation, and nightmares."). As for the purported lack of evidence regarding learning barriers to treatment and tangential thought processes, even if the record contains no such evidence, that is not the crux of plaintiff's symptoms. Rather, the record shows that plaintiff is incapacitated due to severe, debilitating depression and anxiety that causes sadness, low energy, difficulty in relationships, loneliness, lack of motivation, and panic attacks. Tr. 1554. She spends her days confined to the couch or her bed, showers only once or twice a week, cannot perform household chores, and cannot handle any finances. Tr. 1328-29, 1554, 1580, 1629. Plaintiff reported that her multiple mental health medications were "keeping me from going off the ledge, but that's about it." Tr. 707.

For these reasons, Dr. McGuffin found plaintiff had marked limitations in (1) the ability to carry out instructions, (2) the ability to maintain attention and concentration for extended periods, (3) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (4) the ability to sustain an ordinary routine without special supervision, (5) the ability to work in coordination with or proximity to others without being distracted by them, (6) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. Tr. 1656. More specifically, Dr. McGuffin opined that:

- Plaintiff would be unable to carry out instructions for five hours in one day without being totally exhausted the following day;

- Plaintiff's inability to get out of bed and perform any household chores demonstrated she was severely limited in her ability to perform activities within a schedule and maintain regular attendance;

- Plaintiff could not maintain a regular routine due to her depression, which causes lack of energy, fatigue, and a daily feeling of worthlessness.  Additionally, plaintiff's constant focus on her pain and anxiety would interfere with her ability to maintain a routine;

- Plaintiff would have difficulty working around others because of her persistent feelings of poor self-esteem and avoidance of others for fear they would scrutinize her;

- Plaintiff was unable to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without any unreasonable number and length of rest periods;

- Plaintiff was unable to persist in her attention for more than 45-60 minutes because of chronic pain and difficulties with focus, concentration, and decision-making and would be too fatigued to complete tasks;

- Plaintiff was unable to set realistic goals or make plans independently of others, and was markedly limited in her ability to adapt because of her lack of decision-making capability and lack of initiative and self-efficacy about her abilities to set goals when her health may alter her plans.

Tr. 1657.

The paragraph B factors for depression include:

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

Page 17 – OPINION AND ORDER

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

12.04   When Dr. McGuffin's opinion is credited, plaintiff has marked limitations in at least two areas of mental functioning and thus meets the listing for depression.[4]

## IV.   Credit as True Analysis

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ improperly rejected plaintiff's subjective symptom testimony and Dr. McGuffin's opinion. Moreover, the record has been fully developed. In fact, this case has already been remanded

---

[4] Plaintiff raises many additional arguments in her briefing. It is unnecessary to reach all of those issues.

once; this is the second time plaintiff's case is being reviewed by this court. Finally, if the improperly discredited evidence is credited as true, plaintiff would be entitled to benefits.

### ORDER

Defendant's motion to remand is granted in part in that this matter is reversed and remanded; however, rather than being remanded for further proceedings, as defendant requests, it is remanded for immediate award of benefits.

DATED December 22, 2022.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge